## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY V. CAIBY,                          :        Civil No. 3:18-cv-1120
                                           :
                Plaintiff                  :        (Judge Mariani)
                                           :
        v.                                 :
                                           :
WARDEN GARY HAIDLE, et al.,                :
                                           :
                Defendants                 :

FILED
SCRANTON

MAR 0 3 2022

Per_____
DEPUTY CLERK

## MEMORANDUM

Plaintiff Anthony Caiby ("Caiby"), an inmate who was housed at all relevant times at

the Monroe County Correctional Facility, in Stroudsburg, Pennsylvania, commenced this

action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Gary

Haidle, Deputy Warden of Security Joseph McCoy, Monroe County, John and Jane Doe,

and PrimeCare Medical, Inc. ("PrimeCare"). (Docs. 1, 54). Presently pending before the

Court is PrimeCare's motion (Doc. 67) to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6). Caiby failed to respond to the motion and the time for responding has

now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the

reasons set forth below, the Court will grant the motion and grant Caiby the opportunity to

amend his claims against PrimeCare.

---

[1]    Caiby was directed to file a brief in opposition to Defendant PrimeCare's motion to dismiss and was admonished that failure to file an opposition brief would result in PrimeCare's motion being deemed unopposed. (Doc. 71) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

I.    **Allegations of the Complaint**

Caiby was housed at the Monroe County Correctional Facility from February 23, 2013 through September 1, 2016.  (Doc. 1, p. 15).  During this time, Caiby alleges that he was "the victim of a sustained campaign of harassment, and violations of [his] constitutional rights."  (*Id.*).

On October 6, 2013, Caiby engaged in a physical altercation with a fellow inmate and sustained injuries to his head and face.  (*Id.*).

On February 2, 2016, Caiby got into a fight with a unit worker.  (*Id.* at p. 16).  During this altercation, another inmate placed Caiby in a headlock, and cut his finger.  (*Id.*).  Correctional officers responded to break up the fight and Caiby was escorted off the block.  (*Id.*).  After the fight was broken up, Caiby alleges that he was attacked by a correctional officer who slammed his head into a windowpane causing an injury to his forehead.  (*Id.*).  Caiby also suffered a laceration to his right ring finger.  (*Id.*).  A nurse treated his wounds.  (*Id.*).  The following day, Caiby's wounds were again treated, and a nurse informed him that he would see a doctor.  (*Id.* at p. 17).  Caiby alleges that he was not treated by a doctor.  (*Id.*).

On July 14, 2015, Caiby got into an altercation during a cell extraction.  (*Id.* at p. 18).  He was subsequently charged and pled guilty to resisting arrest.  (*Id.*).  In November, 2015, Caiby engaged in another fight with a fellow inmate.  (*Id.*).  During this time, Caiby alleges

that staff spread rumors that he was a snitch, rapist, and pedophile, which caused the fights. (*Id.*).

On February 29, 2016, a nurse allegedly threatened Caiby by stating "We'll run you outta here." (*Id.* at pp. 18-19).

On March 6, 2016, Caiby engaged in a physical altercation with a fellow inmate. (*Id.* at p. 19). Caiby alleges that he was punched and sliced with a razor blade, causing cuts on his fingers. (*Id.*).

From July 14, 2016 through September 1, 2016, Caiby was placed in a medical isolation unit. (*Id.* at p. 20). During his time on this unit, Caiby alleges that he had iodine placed in his food which caused him to have an allergic reaction. (*Id.*). He alleges that he signed up for sick call numerous times about his allergic reactions and that he was assessed by several different nurses and was prescribed Zyrtec. (*Id.*).

Caiby allege that on August 31, 2016, he suffered a severe allergic reaction to purported food poisoning. (*Id.* at p. 22). He claims that Nurse Christine was called to examine his face and swollen throat. (*Id.*). Nurse Christine examined his swollen face and gave him Zyrtec. (*Id.* at p. 23). Nurses Vodka, Ramos, and Dillon also allegedly observed this allergic reaction. (*Id.*). Caiby alleges that after he was treated by Nurse Christine, he was taken for his scheduled visit. (*Id.*). At the end of the visit, Caiby fell off his stool and landed on his back. (*Id.*). Correctional officers asked if he needed a stretcher, but Caiby declined. (*Id.*). After his adrenaline wore off, Caiby began to experience severe pain. (*Id.*).

Officers were alerted, and Nurse Donna Sutton was summoned about his pain. (*Id.*). Caiby was transported to the medical department where his injuries were assessed and Nurse Sutton provided Motrin. (*Id.* at pp. 23-24). Shortly thereafter, Nurse Christine gave him pills which caused him to fall asleep. (*Id.* at p. 24). The following day, September 1, 2016, Caiby was transferred to the State Correctional Institution at Graterford, Pennsylvania. (*Id.*).

Caiby contends that the alleged constitutional violations are the result of Monroe County's policy/custom to use private investigators to smear his name and intimidate him to not file a lawsuit, and Monroe County's failure to properly train its employees. (*Id.* at pp. 18, 21, 25). He asserts that it "was not an official policy but, a custom." (*Id.* at p. 22).

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

4

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

### A.   Deliberate Indifference to Medical Needs[2]

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

---

[2]   It appears that Caiby's claims are based on his status as a pretrial detainee. Pretrial detainees may assert Section 1983 claims for inadequate medical care under the Fourteenth Amendment's substantive due process clause. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 668 (3d Cir. 1988). "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale*, 318 F.3d at 581. The Court will evaluate Caiby's claims under the same standard used to evaluate similar claims brought under the Eighth Amendment. *Id.* at 581-82.

6

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical

7

malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

8

The allegations of the complaint do not establish that PrimeCare acted with deliberate indifference.  On every occasion Caiby presented for treatment, nursing staff examined him, took into consideration his symptoms and complaints, rendered treatment and medical advice, and prescribed medications.  There is not a single instance where Caiby requested medical attention and was denied.  To the extent that Caiby believes he should have received different treatment, this constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346.  It is clear that the nursing staff employed professional judgment in treating Caiby's conditions every time he presented with complaints and symptoms. *See Brown*, 903 F.2d at 278.  This precludes a finding that they acted with the "obduracy and wantonness" necessary to sustain an Eighth Amendment violation. *Whitley v Algers*, 475 U.S. 312, 319 (1986).  Because Caiby has failed to identify any official conduct that exhibits deliberate indifference to his health or safety, he is not entitled to relief on this claim.

### B.    *Monell* Claim against PrimeCare

PrimeCare, as a private entity contracted by a prison to provide health care for inmates, cannot be held liable for the acts of its employees under *respondeat superior* or vicarious liability. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  To hold PrimeCare liable, Caiby "must provide evidence that there was a relevant [PrimeCare] policy or custom, and that the policy caused the constitutional violation [he] allege[s]."

*Natale*, 318 F.3d at 584 (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).  A plaintiff can establish causation by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407 (citation omitted).  Caiby wholly fails to meet his burden concerning a relevant PrimeCare policy or custom that caused a constitutional violation.  PrimeCare is entitled dismissal on this ground.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The Court will grant Caiby leave to amend his claims against PrimeCare.

## V.    Conclusion

The Court will grant Defendant PrimeCare's motion (Doc. 67) to dismiss.  Caiby will be afforded an opportunity to file an amended complaint against PrimeCare.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March ___3___, 2022