# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY V. CAIBY, | : | Civil No. 3:18-cv-1120 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| WARDEN GARY HAIDLE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Anthony Caiby ("Caiby"), an inmate who was housed at all relevant times at the Monroe County Correctional Facility, in Stroudsburg, Pennsylvania ("MCCF"), commenced this action pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Warden Gary Haidle, Deputy Warden of Security Joseph McCoy, Monroe County (collectively, the "County Defendants"), PrimeCare Medical, Inc., and John and Jane Doe. (Docs. 1, 54).  Presently pending before the Court is the County Defendants' motion (Doc. 82) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The motion is fully briefed and ripe for resolution.  For the reasons set forth below, the Court will grant the motion and enter judgment in favor of the County Defendants.  The Court will also dismiss the action against John and Jane Doe pursuant to Federal Rule of Civil Procedure 4(m).

I.    **Factual Background**

A.    **Allegations of the Complaint**

Caiby was housed at the Monroe County Correctional Facility from February 23, 2013 through September 1, 2016.  (Doc. 1, p. 15).  During this time, Caiby alleges that he was "the victim of a sustained campaign of harassment, and violations of [his] constitutional rights."  (*Id.*).

On October 6, 2013, Caiby engaged in a physical altercation with a fellow inmate and sustained injuries to his head and face.  (*Id.*).

On February 2, 2016, Caiby got into a fight with a unit worker.  (*Id.* at p. 16).  During this altercation, another inmate placed Caiby in a headlock and cut his finger.  (*Id.*).  Correctional officers responded to break-up the fight and Caiby was escorted off the block.  (*Id.*).  After the fight was broken up, Caiby alleges that he was attacked by a correctional officer who slammed his head into a windowpane causing an injury to his forehead.  (*Id.*).  Caiby also suffered a laceration to his right ring finger.  (*Id.*).  A nurse treated his wounds.  (*Id.*).  The following day, Caiby's wounds were again treated, and a nurse informed him that he would see a doctor.  (*Id.* at p. 17).  Caiby alleges that he was not treated by a doctor.  (*Id.*).

On July 14, 2015, Caiby got into an altercation during a cell extraction.  (*Id.* at p. 18).  He was subsequently charged and pled guilty to resisting arrest.  (*Id.*).  In November 2015, Caiby engaged in another fight with a fellow inmate.  (*Id.*).  During this time, Caiby alleges

that staff spread rumors that he was a snitch, rapist, and pedophile, which caused the fights. (*Id.*).

On February 29, 2016, a nurse allegedly threatened Caiby by stating "We'll run you outta here." (*Id.* at pp. 18-19).

On March 6, 2016, Caiby engaged in a physical altercation with a fellow inmate. (*Id.* at p. 19). Caiby alleges that he was punched and sliced with a razor blade, causing cuts on his fingers. (*Id.*).

From July 14, 2016 through September 1, 2016, Caiby was placed in a medical isolation unit. (*Id.* at p. 20). During his time on this unit, Caiby alleges that he had iodine placed in his food which caused him to have an allergic reaction. (*Id.*). He alleges that he signed up for sick call numerous times about his allergic reactions and that he was assessed by several different nurses and was prescribed Zyrtec. (*Id.*).

Caiby alleges that on August 31, 2016, he suffered a severe allergic reaction to purported food poisoning. (*Id.* at p. 22). He claims that Nurse Christine was called to examine his face and swollen throat. (*Id.*). Nurse Christine examined his face and gave him Zyrtec. (*Id.* at p. 23). Nurses Vodka, Ramos, and Dillon also allegedly observed this allergic reaction. (*Id.*). Caiby alleges that after he was treated by Nurse Christine, he was escorted to his scheduled visit. (*Id.*). At the end of the visit, Caiby fell off a stool and landed on his back. (*Id.*). Correctional officers asked if he needed a stretcher, but Caiby declined. (*Id.*). After his adrenaline wore off, Caiby began to experience severe pain. (*Id.*). Officers

3

were alerted, and Nurse Donna Sutton was summoned to assess his pain.  (*Id.*).  Caiby was

transported to the medical department and Nurse Sutton provided Motrin.  (*Id.* at pp. 23-24).

Shortly thereafter, Nurse Christine gave him pills which caused him to fall asleep.  (*Id.* at p.

24).  The following day, September 1, 2016, Caiby was transferred to the State Correctional

Institution at Graterford, Pennsylvania.  (*Id.*).

Caiby contends that the alleged constitutional violations are the result of Monroe

County's policy and custom to use private investigators to smear his name and intimidate

him to not file a lawsuit, and Monroe County's failure to properly train its employees.  (*Id.* at

pp. 18, 21, 25).  He asserts that it "was not an official policy but, a custom."  (*Id.* at p. 22).

**B.    Statement of Undisputed Facts[1]**

At all relevant times, Caiby was held as a pre-trial detainee at the Monroe County

Correctional Facility.  (Doc. 83 ¶¶ 1, 6).  Caiby filed his complaint on June 4, 2018.  (*Id.* ¶ 2).

Based on the applicable two-year statute of limitations, the claims not barred by the statute

of limitations run from June 4, 2016 through his discharge from the MCCF in September

---

[1]    Caiby filed a statement of material facts (Doc. 90), however his statement of material facts fails
to comply with Local Rule 56.1 which requires a party opposing a motion for summary judgment to "include
a separate, short and concise [responsive] statement of the material facts, responding to the numbered
paragraphs set forth in" the movant's fact statement.  *See* Local Rule 56.1.  Caiby's responsive fact
statement fails to correspond to the sixty-five-paragraph concise statement of material facts filed by the
County Defendants (Doc. 83).  The averments of Caiby's responsive fact statement are entirely
independent of those in Defendants' filing, and Caiby's submission does not correlate in any meaningful
way to the paragraphs in Defendants' statement.  In sum, Caiby's document does not comply with Local
Rule 56.1's requirement of parity between the two filings.  Therefore, as authorized by Local Rule 56.1, the
Court will admit as uncontroverted the statement of facts submitted by the County Defendants.  *See* Local
Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be
deemed to be admitted unless controverted by the statement required to be served by the opposing
party.").

2016. (*Id.* ¶ 3). Caiby was incarcerated at the MCCF while awaiting trial in the Monroe

County Court of Common Pleas. (*Id.* ¶ 4). Caiby remained in the MCCF for forty-three (43)

months. (*Id.* ¶ 5).

On January 13, 2016, Caiby was convicted of first-degree murder, two counts of

criminal conspiracy, tampering with physical evidence, abuse of a corpse, and possession

with intent to deliver. (*Id.* ¶ 8). He was sentenced to life in prison without the possibility of

parole, plus a consecutive sentence of forty-two (42) to eighty-four (84) months'

incarceration. (*Id.*). The Pennsylvania Superior Court summarized the facts of the murder

as follows:

> "On October 8, 2005, [Caiby] lured the victim to [a conspirator's] residence.
> When the victim entered the living room, [Caiby] bludgeoned him in the head
> with the claw end of a hammer. The assailants then moved the victim to the
> basement where he was shot in the legs four times with a .22 caliber rifle. [A
> conspirator] administered [the victim] two "hot shots," an injection of bleach
> and cocaine, using cocaine provided by [Caiby]. Following the second
> injection, the victim died. After [he] perished, the conspirators burned his
> body in a fire pit behind the house, and disposed of the remaining bones near
> a junkyard in West Hazelton, Luzerne County. His remains were never
> recovered."

(*Id.* ¶ 9).

Caiby departed for state prison on September 1, 2016. (*Id.* ¶ 7).

In his complaint, Caiby alleges he was assaulted by another prisoner on October 6,

2013. (*Id.* ¶ 11). Any claim arising from this incident is barred by the statute of limitations.

(*Id.* ¶ 12). Caiby alleges he was assaulted by another prisoner on February 2, 2016. (*Id.* ¶

13). Any claim arising from this incident is barred by the statute of limitations. (*Id.* ¶ 14).

Caiby alleges excessive force was used by Officer Kofax on February 2, 2016.  (*Id.* ¶ 15).

Officer Kofax is not a Defendant in this action.  (*Id.* ¶ 16).  Any claim arising from this

incident is barred by the statute of limitations.  (*Id.* ¶ 17).  Caiby alleges that he was denied

medical care on February 3, 2016 for injuries sustained in the prisoner assault and alleged

use of excessive force.  (*Id.* ¶ 18).  Caiby does not allege that any named Defendant was

involved in this incident.  (*Id.* ¶ 19).  Any claim arising from this incident is barred by the

statute of limitations.  (*Id.* ¶ 20).

Caiby claims that he engaged in another altercation with an inmate on July 14, 2015

because Sergeant Armond spread rumors that he was a rapist and pedophile.  (*Id.* ¶ 21).

Sergeant Armond is not a Defendant in this action.  (*Id.* ¶ 22).  Any claim arising from this

incident is barred by the statute of limitations.  (*Id.* ¶ 23).

 Caiby claims a second altercation occurred with an inmate in November of 2015

because of the alleged rumors.  (*Id.* ¶ 24).  Caiby does not allege that any named

Defendant was involved in this incident.  (*Id.* ¶ 25).  Any claim arising from this incident is

barred by the statute of limitations.  (*Id.* ¶ 26).

Caiby again claims that he had an altercation with another inmate on March 6, 2016.

(*Id.* ¶ 27).  Caiby does not allege that any named Defendant was involved in this incident.

(*Id.* ¶ 28).  Any claim arising from this incident is barred by the statute of limitations.  (*Id.* ¶

29).

Caiby claims a conspiracy occurred whereby money was anonymously placed in

accounts belonging to the prisoners who assaulted him. (*Id.* ¶ 30). He alleges that this money was deposited "a couple of days" after March 6, 2016. (*Id.*). Defendants contend that Caiby has no competent evidence to prove that these anonymous deposits were made. (*Id.* ¶ 31). Caiby does not allege that any named Defendant was involved in this incident. (*Id.* ¶ 32). Any claim arising from this incident is barred by the statute of limitations. (*Id.* ¶ 33).

Caiby has not claimed that any named Defendant engaged in any of the foregoing acts. (*Id.* ¶ 34).

Caiby avers that MCCF staff poisoned him by adding iodine to his food which triggered his shellfish allergy. (*Id.* ¶ 35). He alleges that this poisoning continued until the day he left the MCCF. (*Id.*). Caiby does not claim that any named Defendant added iodine to his food, he does not identify who placed the iodine in his food, and he does not indicate how he would know that iodine was in his food. (*Id.* ¶ 36). Defendants contend that Caiby has no evidence in support of his theory that iodine can trigger shellfish allergies or that iodine was in his food. (*Id.* ¶ 37).

If an inmate has special dietary needs, they can request special meals that accommodate their special needs in consultation with the medical staff. (*Id.* ¶ 38). Caiby did not ask for a special diet that avoided shellfish or other items to which he was allergic. (*Id.* ¶ 39). It is the jail's policy to provide inmates with food that is nutritiously balanced and diverse. (*Id.* ¶ 40). This policy is in the MCCF Inmate Handbook. (*Id.*).

For each allergic episode, Caiby was prescribed the antihistamine Zyrtec, and "several other medications." (*Id.* ¶ 41). Caiby has no factual basis showing his food ever contained iodine. (*Id.* ¶ 42). Caiby has no factual basis showing that MCCF staff or any named Defendant ever introduced iodine into his food. (*Id.* ¶ 43).

Caiby states that the MCCF subjected him to a "sustained campaign of harassment." (*Id.* ¶ 44). This harassment allegedly began on February 22, 2013, the day he arrived at the MCCF, through September 1, 2016, the day he left the MCCF. (*Id.*).

Caiby alleges that MCCF spread rumors that he was a pedophile, rapist, and informer, with the intent to expose him to ridicule and violence among a population known to act aggressively toward such people. (*Id.* ¶ 45). Caiby claims retaliation but does not explain what the retaliatory conduct was or how it resulted from the exercise of a protected right. (*Id.* ¶ 46). Caiby does not claim that any named Defendant spread rumors about him. (*Id.* ¶ 47).

Caiby believes there was a systematic practice among corrections staff to train other inmates as *agents provocateurs* to attack him, defame him, manipulate him, extract information from him, and otherwise harm him. (*Id.* ¶ 48). He theorizes that these *agents provocateurs* were responsible for instigating assaults and thefts targeting him. (*Id.*). Caiby alleges that personal and privileged legal mail was divulged to these inmate-operatives. (*Id.* ¶ 49). Caiby also alleges that recorded phone calls and recorded conversations with visitors were divulged to these specially trained inmates. (*Id.* ¶ 50). Caiby makes no claim

that any named Defendant engaged in these acts.  (*Id.* ¶ 51).  Defendants contend that

Caiby has no admissible evidence to prove any of these theories.  (*Id.* ¶ 52).

Caiby claims that the MCCF maintains the following policies or customs that caused

alleged deprivation of his constitutional rights: a custom of harassing him, a custom of

retaliating against him for activism and defense of his rights, a custom to use inmates as

*agents provocateurs*, and a custom of practices characterizing psychological manipulation,

duplicity, and punishment similar to interrogation in Guantanamo Bay or Abu Ghraib.  (*Id.* ¶

53).

The MCCF has a Grievance Procedure that is described in the Inmate Handbook.

(*Id.* ¶ 54).  Caiby was given a copy of the Inmate Handbook when he first entered the

MCCF, he acknowledged in writing that he received it, and acknowledged that he received

and reviewed the Inmate Grievance Procedure.  (*Id.* ¶ 56).  The Grievance Procedure

allows an inmate, such as Caiby, to make complaints about the following: conditions of

confinement, accusations against specific officers relating to their treatment of him or other

behavior, dissatisfaction with medical care, officers not protecting him from harm or

providing him with an appropriate level of medical care, and the quality of the food he

received while an inmate.  (*Id.* ¶ 57).  The claims in Caiby's complaint are covered by the

MCCF Grievance Procedure.  (*Id.* ¶ 58).  The Grievance Procedure provides for several

levels of review if an inmate is dissatisfied with the response he receives.  (*Id.* ¶ 59).

Warden Haidle is the final level of review in the grievance process, and all grievances and

decisions responding to grievances or grievance appeals are memorialized in writing.  (*Id.* ¶ 60).

In his complaint, Caiby admits that he did not exhaust all grievance remedies.  (*Id.* ¶ 61).  Defendants contend that Caiby has no competent evidence to show that anyone interfered with his right, as commemorated in the MCCF Inmate Handbook, to pursue his grievance remedies to exhaustion.  (*Id.* ¶ 62).  Caiby did not file any grievances pertaining to misconduct by Warden Haidle, misconduct by Deputy McCoy, or unconstitutional policies and customs of Monroe County.  (*Id.* ¶ 63).

## II.   Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  FED. R. CIV. P. 56(a).  "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.    Discussion

### A.    Exhaustion of Administrative Review[2]

The County Defendants assert that Caiby failed to properly exhaust any grievances

in the prison's administrative review process prior to proceeding to federal court.  (Doc. 84,

pp. 13-15).  Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is

required to pursue all avenues of relief available within the prison's grievance system before

bringing a federal civil rights action concerning prison conditions.  *See* 42 U.S.C. §

1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000).  Section 1997e(a)

establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It has

---

[2]    On July 15, 2022, the Court issued an Order apprising the parties that it would consider
exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)
and *Small v. Camden Cty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to
supplement the record with any additional evidence relevant to exhaustion of administrative remedies.
(Doc. 101).

been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

In the matter *sub judice*, the MCCF Grievance Procedure provides for five (5) levels of appeal of a prisoner's complaint. This procedure is outlined in the Inmate Handbook, which provides, in pertinent part:

> If you feel that someone or some action that has been taken against you is unjust or unfair, you may file a grievance. A grievance includes at least one level of appeal. It is encouraged that problem solving begin at the level of most direct inmate contact. You should utilize the grievance procedure, only

after addressing the problem with the Housing Unit Officer and reaching no satisfaction to the problem which you feel there is reason for complaint.  You should fill out an inmate request slip, checking the box marked grievance and filling in the space provided with a short explanation of the problem.  This complete form should be forwarded to the Housing Unit Officer.

(Doc. 83-1, p. 5).  The procedure requires the inmate's grievance to be heard by (1) the Housing Unit Officer; (2) the Housing Unit Counselor; (3) the Unit Commander; (4) the Deputy Warden; and (5) the Warden.  (*Id.* at p. 6).  Caiby received the Inmate Handbook upon incarceration.  (Doc. 83 ¶ 56).  Thus, Caiby knew or should have known the proper procedure for filing a grievance.  The evidence of record reveals that Caiby did not file any grievances against the named Defendants and did not file any grievances related to any of the claims in the complaint.  (*Id.* ¶ 63; Doc. 83-1, p. 3 ¶¶ 8-9).  Specifically, there is no record evidence that Caiby filed any grievances against any of the County Defendants relating to his health, his claim that he was poisoned, or that prison staff targeted him for unlawful treatment or encouraged other inmates to harm him.  (Doc. 83 ¶ 63; Doc. 83-1, p. 3 ¶ 9).

The PLRA mandates that inmates properly exhaust their administrative remedies before filing suit in federal court, a requirement which demands compliance with an agency's deadlines and procedural rules.  *Woodford*, 548 U.S. at 90-93.  It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit.  *Booth v. Churner*, 532 U.S. 731, 738 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."); *see also Oriakhi v. United States*, 165 F.

App'x 991, 993 (3d Cir. 2006) (nonprecedential) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit.").

Under certain circumstances, administrative remedies may not be effectively available to an inmate, preventing a timely pursuit of the prison grievance process. *See, e.g., Camp*, 219 F.3d at 281; *Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) ("a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion"); *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision). Caiby asserts that he was not able to use the MCCF grievance system after being transferred from the MCCF and that his transfer interfered with his ability to complete the grievance process. Even after Caiby was transferred from the MCCF he was still a prisoner, and, thus, he was still required to exhaust available administrative remedies. His transfer does not excuse his duty to exhaust available administrative remedies. However, the MCCF grievance policy says nothing about how to pursue and appeal grievances after a transfer, and a prisoner cannot be expected to exhaust remedies he does not know about. (*See* Doc. 83-1, pp. 6-7; *see Hardy v. Shaikh*, 959 F.3d 578, 586 (3d Cir. 2020); *see also Murphy v. Grochowski*, No. 18-01404, 2020 WL 806584, at *14 (M.D. Pa. Jan. 7, 2020), *report and recommendation adopted*, 2020 WL 815773 (M.D. Pa. Feb. 18, 2020) (denying summary judgment on exhaustion

because "nothing in the [jail's] grievance policy would have put [the plaintiff] on notice that

he had to (or could) pursue a grievance ... after he had been transferred.")).

Many courts within the Third Circuit rely on *Williamson v. Wexford Health Sources,*

*Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005) (*per curiam*), for the proposition that a transfer to

another facility does not excuse the PLRA's exhaustion requirement.  However, recently,

the Third Circuit noted that it "did not address that precise issue in *Williamson*, where the

inmate's position was that administrative exhaustion was futile after his transfer because he

received the relief sought in his grievance." *Caiby v. Haidle*, 785 F. App'x 64, 66 n.2 (3d Cir.

2019).  Here, Caiby was transferred from a county facility to a state correctional facility.

Each institution presumably has its own grievance policy and Caiby's access to the MCCF

grievance would not remain intact and readily available once he was transferred to a state

correctional facility.  The MCCF grievance policy did not put Caiby on notice that he had to

pursue a grievance with the MCCF after his transfer from the facility.  (*See* Doc. 83-1, pp. 6-

7).  Therefore, the Court will deny the County Defendants' motion for summary judgment

based on failure to exhaust administrative remedies.

### B.   Statute of Limitations

In § 1983 actions, federal courts apply the state's statute of limitations for personal

injury.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (in § 1983 actions the court looks to

the law of the state for the length of the statute of limitations for personal injury actions).  In

Pennsylvania, the relevant statute of limitations is two (2) years.  *Wooden v. Eisner*, 143 F.

App'x 493, 494 (3d Cir. 2005); *see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1087 (3d Cir. 1988) ("[T]he correct statute of limitations for . . . [§] 1983 actions is the state statute of limitations for personal injury tort actions."). Caiby's claims arose in Pennsylvania; thus, the applicable statute of limitations is Pennsylvania's two-year statute of limitations for personal injury actions.  42 PA. CONS. STAT. ANN. § 5524(2).

However, the date when a cause of action accrues is still a question of federal law. *Smith v. Wambaugh*, 887 F. Supp. 752, 755 (M.D. Pa. 1995).  Under federal law, a civil rights cause of action accrues—and the statute of limitations begins to run—when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). In other words, the limitations period begins to run when a plaintiff has sufficient notice to place him on alert of the need to begin investigating.  *Gordon v. Lowell*, 95 F. Supp. 2d 264, 272 (E.D. Pa. 2000).  Importantly, the "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  *Id.*

The allegations of the complaint pertain to many incidents that admittedly occurred several years ago.  Caiby asserts that he was assaulted by prisoner on October 6, 2013, he was subjected to excessive use of force on February 2, 2016, he was denied medical care on February 3, 2016, he was assaulted by a prisoner in November of 2015, he was threatened by a nurse on February 29, 2016, he was assaulted by prisoner on March 6,

2016, and he claims a conspiracy occurred on March 6, 2016 when money was anonymously deposited in inmates' accounts. (Doc. 1, pp. 15-24). Caiby believes many of these incidents occurred because MCCF staff allegedly spread rumors that he was a rapist and pedophile. (*Id.* at p. 18). He asserts that these rumors began on July 14, 2015. (*Id.*). Based on these allegations, the statute of limitations began running at the latest, on July 14, 2015, the date Caiby knew or should have known of the injury which is the basis of this § 1983 action. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which its action is based'") (citations omitted). Caiby did not file his complaint until May 27, 2018.[3] Because much of the conduct giving rise to Caiby's claims took place prior to May 27, 2016, the earliest possible date on which any allegation in the complaint could be deemed timely, several of his claims, as outlined above, are barred by the two-year statute of limitations applicable to § 1983 actions.

---

[3]    Under the prison mailbox rule, a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Pabon v. Superintendent S.C.I. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011). In establishing this rule, the Supreme Court recognized the unique challenge prisoners confront in that they cannot personally deliver their documents to the courthouse for filing, nor can they control when their documents are approved to be sent through the mail. *Houston*, 487 U.S. at 271. "The *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id*. at 275. Based on the date of execution of the complaint, May 27, 2018, the complaint is deemed filed on May 27, 2018.

### C.  Poisoning Claim

Caiby asserts that MCCF staff poisoned him by placing iodine in his food.  He does not specify who in particular poisoned him or whether the poisoning was deliberate, negligent, or purely accidental.  Despite these gaps, Caiby's allegation could be construed as an Eighth Amendment claim.

A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) (stating, "an inmate [is required] to show that 'he is incarcerated under conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety").  Under the first element, a "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Farmer*, 511 U.S. at 834.  To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists; and (3) draw the inference.  *Id.* at 837.  Caiby fails to meet this burden.  He has not presented any evidence that any of the MCCF staff "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety" with respect to the alleged poisoning.  *Id.*

To the extent that Caiby is attempting to state a claim against Defendants Haidle and McCoy in their official capacities as Warden and Deputy Warden, Caiby would need to comport with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Under *Monell*, a municipality or its employee in his official capacity can be found liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Caiby has not presented any evidence that his poisoning resulted from a policy or custom at MCCF. He has thus failed to establish such a claim.

### D. Verbal Harassment and Defamation Claims

Caiby appears to indicate that he suffered mental and emotional injuries as a result of the County Defendants' alleged harassment. 42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal or punitive damages even in the absence of compensable harm.

20

Under the standards announced in *Allah* and Section 1997e(e), Caiby's civil rights claims which assert a violation of his constitutional rights and seek in part an award of compensatory damages can proceed only to the extent that they seek non-compensatory damages. *See Ostrander v. Horn*, 145 F.Supp.2d 614, 618 (M.D. Pa. 2001).

Caiby seeks punitive damages against the prison officials based on alleged verbal threats and allegations that staff spread rumors that he was an informant, rapist, and pedophile. Verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (holding threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Quiero v. Muniz*, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."). Thus, Caiby cannot state a claim for cruel and unusual punishment under the Eighth Amendment by alleging only verbal harassment or threats. Caiby does not assert that any of the named Defendants physically harmed him. However, Caiby contends that these rumors exposed him to violence with other inmates. As set forth above, the alleged inmate assaults are time-barred and cannot serve as a factual predicate for any derivative claim. Based on the foregoing, the Court will grant Defendants' motion with respect to Caiby's Eighth Amendment claim.

Caiby also appears to assert that prison staff defamed his character by spreading rumors that he was an informant, rapist, and pedophile.  Defamation is an intentional tort in the Commonwealth of Pennsylvania.  *Joseph v. Scranton Times, L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008).  "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, . . . the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."  1 Pa. C.S. § 2310.  "The Pennsylvania legislature has not chosen to waive this immunity for intentional torts."  *Wicker v. Shannon*, No. 3:09-CV-1629, 2010 WL 3812351, at *9 (M.D. Pa. Sept. 21, 2010) (citing 42 Pa. C.S.A. § 8522).  Here, the undisputed facts indicate that the County Defendants were acting within the scope of their duties when they purportedly defamed Caiby.  Moreover, because state corrections officers are protected from intentional tort claims, such as defamation, Caiby's defamation claim is not cognizable under § 1983.  *See Miller v. Trometter*, No. 4:11-CV-811, 2012 WL 5933015, at *5 (M.D. Pa. Nov. 27, 2012); *see also Paul v. Davis*, 424 U.S. 693, 701 (1976).  Defendants' motion will be granted in this regard.

### E.  *Monell* Claim

Caiby's amended complaint adds Monroe County as a Defendant in this matter. (Doc. 54).  He suggests that Monroe County is liable for waging a psychological campaign against him and other inmates.

22

Defendant Monroe County is a municipality and, therefore, cannot be held liable for either its conduct or the conduct of employees in county agencies, such as MCCF, pursuant to *respondeat superior*. *See Brickell v. Clinton Cty. Prison Bd.*, 658 F. Supp. 2d 621, 626-27 (M.D. Pa. 2009). To successfully set forth a § 1983 claim against Monroe County, Caiby must raise a *Monell* claim alleging that the County is a governmental entity and thus a "person" under § 1983, and must allege that either a policy, or lack of policy, of the County led to the violation of his constitutional rights. *See Monell*, 436 U.S. 658. Under *Monell*, Monroe County "can be sued directly under § 1983 . . . [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by [its] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Id.* at 690. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Monroe County is a municipality subject to liability as a "person" under § 1983. *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Here, Caiby asserts that the alleged constitutional violations are the result of an "[u]nconstitutional policy/custom", the County's alleged failure to adequately train employees at the MCCF, and failure to promulgate policies to protect his constitutional rights. (*See* Doc. 1, pp. 18, 21, 25, 27; Doc. 86; Doc. 90, pp. 5-6; Doc. 93). Beyond his conclusory allegations, Caiby

"points to no prior incidents from which [the Court] might reasonably infer that the County and its governing officials had actual or constructive knowledge of the purported policy deficiencies upon which [his] § 1983 *Monell* claim is premised." *Ferguson v. Davy*, No. 4:17-CV-2136, 2019 WL 1009444, at *4 (M.D. Pa. Jan. 11, 2019), *report and recommendation adopted*, 2019 WL 1003609 (M.D. Pa. Feb. 28, 2019); *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").  Moreover, any suggestion that the County's policies and customs were not appropriate is insufficient to state a claim because "policies are not deficient simply because they are not the best." *Ferguson*, 2019 WL 1009444, at *4; *see also Serafin v. City of Johnstown*, 53 F. App'x 211, 215 (3d Cir. 2002) ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here.").  Caiby, therefore, has failed to state a § 1983 claim against Monroe County regarding the alleged use of psychological tactics.

The Court concludes that Caiby has failed to produce any evidence to overcome the County Defendants' summary judgment motion and cannot argue against summary

judgment by merely relying on unsupported assertions, inferences based upon a

speculation or conjecture, or unverified, conclusory allegations.  Under Rule 56, Caiby was

required to go beyond his pleadings in order to establish the existence of a genuine dispute

of material fact.  *See Celotex Corp.*, 477 U.S. at 324.  Because he has failed to do so, the

County Defendants are entitled to an entry of summary judgment in their favor on the *Monell*

claim.  To the extent that Caiby seeks to allege that other inmates' constitutional rights were

violated, he lacks standing to do so.  *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981)

(holding that prisoners do not have standing to sue on behalf of their fellow inmates).

### F.    Lack of Personal Involvement of Defendants Haidle and McCoy

Caiby names Defendants Haidle and McCoy, the Warden and Deputy Warden of

Security, due to their supervisory positions.  He asserts that they are responsible for the

"orderly operation, and safety of inmates in the Monroe [C]ounty prison."  (Doc. 1, p. 27).

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.  A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *Id.* at 1207.

Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). With respect to Haidle and McCoy's supervisory roles of Warden and Deputy Warden, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Caiby failed to set forth such claims, and liability cannot be imposed on Defendants Haidle and McCoy based on their positions and duties as supervisors. Accordingly, insofar as Caiby's claims against Defendants Haidle and McCoy rely on a *respondeat superior* theory of liability, they are entitled to judgment as a matter of law.

Additionally, any attempt to hold Defendants Haidle and McCoy liable based on their involvement in the grievance procedure also fails. The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, any claims against Defendants Haidle and McCoy that are premised on their responses to a grievance must fail because dissatisfaction with a response to an inmate's grievance does not support a constitutional claim. *See Brooks v. Beard*, 167 F. App'x. 923,

925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability).

Based on the above, the County Defendants' motion for summary judgment will be granted based on a lack of personal involvement of Warden Haidle and Deputy Warden McCoy.

### G.    Injunctive and Declaratory Relief

To the extent that Caiby seeks declaratory or injunctive relief, his claims are moot because he is no longer housed at the MCCF.  (*See* Doc. 1, pp. 3, 9).  Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. CONST., art. III, § 2.  "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed,'" *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (citation omitted).  Generally, an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief.  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003); *Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory relief

28

against the named defendants was rendered moot by his transfer to another prison). Because Caiby is no longer incarcerated at the MCCF, he does not present a live case or controversy for injunctive or declaratory relief regarding the policies or practices at that facility.

### H.   Qualified Immunity

The doctrine of qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). The burden to establish qualified immunity rests with the defendant claiming its protection. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise

discretion in deciding which of the two *Saucier* prongs should be addressed first). Because

there are no genuine issues of fact as to whether a constitutional right has been violated,

the County Defendants are protected from liability in their individual capacities by qualified

immunity.

## IV.   Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with

the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the
> court -- on motion or on its own after notice to the plaintiff -- must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time. But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). The John and Jane Doe Defendants were named in the complaint

that was filed on May 27, 2018 and, to date, have not been identified or served in this case.

The Court must engage in a two-step process in determining whether to dismiss the

unidentified, non-served Defendants or grant Caiby additional time to effect service. "First,

the district court should determine whether good cause exists for an extension of time. If

good cause is present, the district court must extend time for service and the inquiry is

ended. If, however, good cause does not exist, the court may in its discretion decide

whether to dismiss the case without prejudice or extend time for service." *Petrucelli v.*

*Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith

on the part of the party seeking an enlargement and some reasonable basis for

noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Caiby failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Caiby that the action against the John and Jane Doe Defendants was subject to dismissal and directed him to show cause why the action against these Defendants should not be dismissed pursuant to Rule 4(m). (Doc. 73). In response, Caiby represented that he would be able to identify the John and Jane Doe Defendants through discovery. (Doc. 74). Despite this assertion, Caiby has still failed to identify these Defendants. Moreover, his *pro se* status is not good cause to excuse his failure to timely identify and serve these Defendants. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004).

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Caiby's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 42 ¶ 9) (advising Caiby that failure to properly name a defendant, or provide an accurate mailing

address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Caiby's lack of good faith effort to identify and serve the John and Jane Doe Defendants despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the unidentified, non-served Defendants will be dismissed from this action.

## V. Conclusion

The Court will grant the County Defendants' motion (Doc. 82) and enter judgment in their favor. The Court will also dismiss the action against the John and Jane Doe Defendants pursuant to Federal Rule of Civil Procedure 4(m). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July 27, 2022